78 N.J. Super. 90 (1963)
187 A.2d 614
BOARD OF EDUCATION OF THE TOWNSHIP OF MANCHESTER, OCEAN COUNTY, PETITIONER-APPELLANT,
v.
DR. FREDERICK RAUBINGER, COMMISSIONER OF NEW JERSEY STATE BOARD OF EDUCATION AND MILO E. SCHUMACHER, JR., RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1963.
Decided January 21, 1963.
*91 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Morton C. Steinberg argued the cause for appellant (Messrs. Steinberg & Steele, attorneys).
Mr. Franklin H. Berry, Jr., argued the cause for respondent Schumacher (Messrs. Berry, Whitson & Berry, attorneys).
Mr. Joseph A. Hoffman, Deputy Attorney General, argued the cause for respondent Commissioner of Education (Mr. Arthur J. Sills, Attorney General, attorney; Mr. Hoffman on the brief).
*92 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The decision in this case turns on the meaning of the words "three consecutive calendar years" in N.J.S.A. 18:13-16, which deals with the tenure of public school teachers, principals and superintendents. The matter comes before us by way of appeal from the decision of the Commissioner of Education determining that respondent Schumacher acquired tenure as principal in the Manchester Township school system on the completion of employment for three consecutive calendar years, from July 1, 1959 to June 30, 1962.
Schumacher was appointed principal by resolution of the Board of Education of Manchester Township adopted May 14, 1959, and a two-year contract was entered into providing for his employment from July 1, 1959 to June 30, 1961. He was reappointed principal by resolution dated May 11, 1961, and a one-year contract was executed providing for his employment from July 1, 1961 to June 30, 1962. Each of the contracts contained a clause permitting either party to terminate the employment by giving the other 60 days' written notice of such intention. Neither party gave written notice. At a regular meeting held on May 10, 1962, the board of education voted that "an employment contract be denied Mr. Schumacher."
Schumacher contends that by virtue of the terms of his employment and the board's failure to give him 60 days' notice of intention to terminate his contract, he acquired tenure pursuant to condition (a) of N.J.S.A. 18:13-16. The full text of that statute is:
"The services of all teachers, principals, superintendents and assistant superintendents, of the public schools, excepting those who are not the holders of proper teachers' certificates in full force and effect, shall be during good behavior and efficiency, (a) after the expiration of a period of employment of three consecutive calendar years in that district unless a shorter period is fixed by the employing board, or (b) after employment for three consecutive academic years together with employment at the beginning of the next succeeding academic year, or (c) after employment, within a period of any four consecutive *93 academic years, for the equivalent of more than three academic years, some part of which must be served in an academic year after July first, one thousand nine hundred and forty; provided, that the time any teacher, principal or supervising principal had taught in the district in which he was employed at the end of the academic year immediately preceding July first, one thousand nine hundred and forty, shall be counted in determining such period or periods of employment in that district.
An academic year, for the purpose of this section, means the period between the time school opens in the district after the general summer vacation until the next succeeding summer vacation."
The board, on the other hand, claims that "calendar years," as used in the statute, can only be construed to mean periods beginning January 1 and ending December 31 of each year. It reckons Schumacher's employment as follows:

 July 1, 1959 to December 31, 1959 6 months
 January 1, 1960 to December 31, 1960 1 year
 January 1, 1961 to December 31, 1961 1 year
 January 1, 1962 to June 30, 1962 6 months

The argument of the board is that this employment does not constitute "three consecutive calendar years" within the meaning of the statute, but only two.
It is not disputed that Schumacher was employed as principal in the Manchester Township school system for 36 consecutive months, from July 1, 1959 to June 30, 1962.
Following the board of education's formal action in denying Schumacher any further contract, he petitioned the Commissioner of Education for an order declaring that he had acquired tenure as a principal and directing his reinstatement to that position. In determining that Schumacher had acquired tenure, the Commissioner considered the legislative history of N.J.S.A. 18:13-16, the administrative interpretation given the statute, and the decisions of our courts. He found that the principal design of condition (a) of the statute was to establish a 36-month probationary period, measured from the date on which employment began. In his view, this interpretation was the most reasonable one, and was consistent with the purpose of the tenure act.
*94 In arguing for the proposition that "calendar year" in condition (a) means from January 1 to December 31, appellant board refers, among other things, to the historical controversy which led to the adoption of the Gregorian calendar, dictionary definitions, and the fact that nowhere in Title 18, Education, has the Legislature expressly provided for a 36-month probationary period. It also points to the provision of N.J.S.A. 1:1-2:
"Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them.

* * * * * * * *
Month; year. The word `month' means a calendar month, and the word `year' means a calendar year."
We do not find this definition section of the Revised Statutes helpful, in view of the language of its opening paragraph which calls for a consideration of the subject or context of the particular statute under consideration. The first, and immediately preceding section of the Revised Statutes, R.S. 1:1-1, directs that in the construction of a statute, words and phrases are to be read and construed with their context and shall, "unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning."
We are therefore compelled to study the statutory history and context, and to seek out the legislative purpose sought to be achieved by N.J.S.A. 18:13-16. General dictionary definitions, and meanings accorded to "calendar year" in decisions dealing with entirely different statutory provisions, are singularly unenlightening in view of the specific problem posed by this appeal. For example, appellant board refers us to R.S. 18:7-79, which deals with school district appropriations based on the calendar year. That statute concerns school fiscal matters and calls upon the legal voters of *95 the school district to determine the amount to be raised for the period from January 1 to June 30 of each year, and to determine annually the amount to be appropriated for the succeeding school year.
The board also relies on Newman v. Fair Lawn, 31 N.J. 279 (1960), and the language of the court (at page 283) that a calendar year runs from January 1 to December 31. But that case dealt with the terms of one class of members of a municipal planning board under the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq. The section of the act considered was N.J.S.A. 40:55-1.4, which provides that the governing body may by ordinance create a planning board of not less than five nor more than nine members, to be divided into four classes. Among other things, that section provides that the term of one member of class IV first appointed "shall expire at the end of each year beginning at the end of the first year." The Newman court recognized that the word "year" has been given many meanings, and may denote a 365-day or 12-month period, regardless of when it begins. However, "where the Legislature has indicated how the word should be construed in the absence of an obviously contrary intent, `year' is taken to mean the period between January 1 and December 31, unless strong reasons compel a contrary conclusion." (Italics ours) The court found no logically compelling circumstances to indicate that the Legislature intended any period other than January 1-December 31 (at pages 283-286). We view that conclusion as strictly limited to the particular statute and facts involved in Newman.
We are persuaded that there exist "strong reasons" compelling a conclusion contrary to that for which appellant board argues, and that "calendar year" in N.J.S.A. 18:13-16, condition (a), does not in the factual context of this appeal mean January 1 to December 31.
The original tenure law, L. 1909, c. 243, provided for tenure "after the expiration of a period of employment of three consecutive years in that [school] district, unless a shorter *96 period is fixed by the employing board." We are informed that the law invited certain abuses. For example, a board of education could indefinitely prevent a teacher from obtaining tenure by the simple device of interrupting continuity of employment for a short period at the end of each year.
The law was amended by L. 1934, c. 188, so that a teacher, principal or supervising principal in any school district could attain tenure "after the expiration of a period of employment of three consecutive calendar years in that district unless a shorter period is fixed by the employing board; or upon beginning service for the fourth consecutive academic year, or upon continuous employment during all the time schools are open in the district for a period of three calendar years from the date of original employment." The 1934 act went on to define "academic year" for the first time, as meaning the period from the time school opens after the general summer vacation until the next succeeding summer vacation. It is clear that the 1934 Legislature, in passing chapter 188, understood the term "calendar year" to mean something quite different from the period extending from January 1 to December 31. It indicated that a "calendar year" could mean any 12-month period.
The tenure act was again amended by L. 1935, c. 27, so as to read that tenure could be acquired "after the expiration of a period of employment of three consecutive calendar years in that district unless a shorter period is fixed by the employing board; or after employment for three consecutive academic years together with employment at the beginning of the next succeeding academic year." The definition of "academic year" was retained, thus distinguishing its lesser term from a 12-month calendar year.
In 1940 the Legislature further amended the tenure act. L. 1940, c. 43. N.J.S.A. 18:13-16 stems from that act, which has continued unchanged in the Revised Statutes except for the slight amendment effected by L. 1952, c. 236, § 12, extending the tenure provision to superintendents and assistant superintendents in the public schools.
*97 A review of the initial 1909 law and the subsequent amendments refining the meaning of the original phrase "three consecutive years" makes it clear that the Legislature intended nothing more as a condition to obtaining tenure than employment for 36 months, regardless of the date when such employment began. This term of service was to serve the obvious purpose of a probationary period.
Strict or literal meaning cannot be given to legislative language when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the apparent legislative design. In Wright v. Vogt, 7 N.J. 1, 7 (1951), the Supreme Court, adopting the language of a New Hampshire case, said that the will of the lawgiver is to be found, not by the mechanical or formal application of words and phrases, but by the exercise of reason and judgment. "Scholastic strictness of definition" cannot be adopted if it prevents a reasonable construction. And see Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956). In this as in other cases of statutory construction, the reason and spirit of the act prevail over the strict letter.
If appellant board's construction of the statute were to prevail, Schumacher, to acquire tenure, would be obliged to complete not 36, but 42 months of employment, in order to embrace three calendar years beginning with January 1 and ending with December 31. The Commissioner of Education could find no such intention or purpose in the statute, either by its own terms or in long-standing administrative and judicial practice. Nor can we.
The court in Lane v. Holderman, 23 N.J. 304, 322 (1957), followed the well established principle that "resort may be had to long usage and practical interpretation in construing statutes to ascertain their meaning, to explain a doubtful phrase or to illuminate any obscurity." And see Schierstead v. Brigantine, 29 N.J. 220, 231 (1959). A long-standing statutory interpretation by an administrative agency is entitled to great weight, and when that interpretation is adopted by the courts, it becomes practically conclusive.
*98 The Commissioner and the State Board of Education have over the years consistently held to the view that employment for three consecutive calendar years does not necessarily refer to the periods beginning January 1 and ending December 31. The probationary period of 36 months was recognized in 1912 in the case of Davis v. Overpeck Tp. Board of Education, 1938 N.J. School Law Decisions (hereafter S.L.D.) 464, reversed by the State Board of Education, ibid., 466 (1913), whose decision was affirmed by our former Supreme Court, ibid., 470 (1913). The tenure act, L. 1909, c. 243, called for three consecutive years of service. Davis had been a school principal for three consecutive years beginning September 1909. He was summarily demoted to the rank of teacher. The Commissioner, State Board of Education and Supreme Court all concurred that Davis had tenure. Cf. Allen v. Belleville Board of Education, 1938 S.L.D. 380, 382 (1928), where appellant was employed as a teacher in the Belleville schools from July 1, 1925 to January 30, 1926, and again for the school years 1926-7 and 1927-8. He was notified of his dismissal on June 14, 1928. The Commissioner concluded that appellant had not actually been employed as a teacher for "three consecutive calendar years, namely, from July 1, 1925 to June 30, 1928," so as to acquire tenure under the 1909 act.
In Carroll v. Matawan Board of Education, 1938 S.L.D. 383 (1929), appellant was appointed a teacher under a contract executed July 15, 1926, for a term of one year beginning September 7, 1926. She was reappointed in 1927 under a similar contract, effective September 1. Her third contract provided for a one-year employment from September 4, 1928. Her services were formally terminated as of August 15, 1929. Miss Carroll contended she had tenure, claiming that her employment began July 15, 1926. The Commissioner, after referring to C.S. 4973 (now N.J.S.A. 1:1-2) defining "year" as a calendar year, said that "a calendar year must mean any period of 365 days, or any period including twelve calendar months," and that the statute had been so construed *99 by the Supreme Court in the Davis case, cited above. A teaching contract, said the Commissioner, might legally run from September to September, but the tenure law required completion of three such calendar years of employment. He concluded that the termination of appellant's services on August 15, 1929 was entirely legal. The State Board of Education affirmed, 1938 S.L.D. 387 (1930). On appeal, our former Supreme Court again affirmed, 8 N.J. Misc. 859, 861, 152 A. 339 (1930), holding that Miss Carroll "under no circumstances would have performed three calendar years of service until September 7th 1929, three years from the commencement of her first contract of employment." Although the Carroll case was decided before the amendment of L. 1934, c. 188, we have here a clear expression by the court that "calendar year" is not to be confined to the period from January 1 to December 31.
More recently our Supreme Court, in Zimmerman v. Newark Board of Education, 38 N.J. 65 (1962), had occasion to consider the tenure act as it now reads, N.J.S.A. 18:13-16, and held that Zimmerman had not been employed for three calendar years within the meaning of the statute. It expressly agreed with the interpretation given the act in the Carroll case.
The latest administrative application of N.J.S.A. 18:13-16, condition (a), may be found in Mullen v. Jefferson Board of Education, 1960-61 S.L.D., 194 (1961) on appeal to the State Board of Education. The Commissioner there found that petitioner had tenure, since his employment "began on July 1, 1957 and continued without interruption until June 30, 1960, a period of three calendar years."
Beyond the aid given to the construction of the statute by its legislative history and the long years of administrative and judicial practice in recognizing a 36-month probationary period, however designated, as the basic period for acquiring tenure, other considerations compel an affirmance of the Commissioner's determination. Any meaning we might give the tenure act, other than that a calendar year comprises *100 any period of 365 days or 12 calendar months, would create an anomoly. Were we to follow appellant board's argument, a teacher, principal or superintendent employed only during the academic year as defined in N.J.S.A. 18:13-16, would acquire tenure by employment at the beganning of the fourth academic year (condition (b)), whereas one who had been employed on a 12-month year basis would have to serve a probationary period in excess of 36 months unless, perchance, his employment began on January 1. A statute will not be construed to reach an absurd or anomolous result. Robson v. Rodriquez, 26 N.J. 517, 528 (1958). As this court said in Gannon v. Saddle Brook Tp., 56 N.J. Super. 76, 80 (1959):
"* * * The legislative mind is presumed to be consistent, and statutes should be construed to the end that their respective provisions will be consistent one with the other, thus giving effect to the true meaning, intent and purpose of the legislation as a whole. [citing cases] * * *"
And see R.S. 1:1-1, above.
The date, January 1, has no significant relevance to the operation and aims of the tenure statute. Boards of education usually hire teachers in the spring and early summer months, to begin service the following September. As we have already noted, if we were to adopt the January 1-December 1 period as the calendar year, persons so employed would have to serve until January 1 following appointment, before service credit on tenure would commence. Such persons would thus be required to serve for a period of 42 months before obtaining the protection afforded by N.J.S.A. 18:13-16, condition (a). This would deleteriously affect our educational system.
Three full years are a sufficient term within which a board of education may judge the competency of a teacher, principal or superintendent. It is also a reasonable period for one in the teaching profession to be expected to demonstrate his or her capacity before achieving tenure status. To interject an arbitrary requirement that this period must commence with January 1 is wholly without reason.
*101 The tenure provisions are designed to aid in the establishment of a competent and efficient school system by providing teachers, principals and superintendents with a measure of security in the rank they hold after years of service. Such provisions should be given liberal support, consistent with legitimate demands for governmental economy. Viemeister v. Prospect Park Board of Education, 5 N.J. Super. 215, 218 (App. Div. 1949).
Affirmed.