NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5257-11T4
DOCKET NO. A-0122-13T3

IN RE FAILURE OF THE COUNCIL
ON AFFORDABLE HOUSING TO
ADOPT TRUST FUND COMMITMENT
REGULATIONS.

APPROVED FOR PUBLICATION

April 9, 2015

APPELLATE DIVISION

_____

Argued March 24, 2015 — Decided April 9, 2015

Before Judges Fisher, Nugent and Accurso.

On appeal from the inaction of the Council
on Affordable Housing.

Kevin D. Walsh argued the cause for
appellant Fair Share Housing Center (Fair
Share Housing Center, attorney; Mr. Walsh,
Adam M. Gordon and Laura Smith-Denker, on
the briefs).

Geraldine Callahan, Deputy Attorney General,
argued the cause for respondent Council on
Affordable Housing (John J. Hoffman, Acting
Attorney General, attorney; Robert T. Lougy,
Assistant Attorney General, of counsel; Ms.
Callahan, on the briefs).

Jeffrey R. Surenian argued the cause for
intervenor New Jersey State League of
Municipalities (Jeffrey R. Surenian &
Associates and NJ State League of
Municipalities, attorneys; Mr. Surenian, of
counsel and on the brief; Donna A. McBarron,
on the briefs).

Donald J. Sears argued the cause for
intervenor Township of South Brunswick.

> Gerald J. Muller argued the cause for amicus
> curiae Affordable Housing Professionals of
> New Jersey (Miller, Porter & Muller, P.C.,
> attorneys; Mr. Muller, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Despite the Legislature's clear and unambiguous direction that the Council on Affordable Housing (COAH) promulgate regulations defining when affordable housing trust funds are committed, and despite previously expressing its intention to comply with that command, COAH has failed and refused to adopt regulations, leaving municipalities in a morass of uncertainty while facing the prospect of an arbitrary seizure of affordable housing trust funds. In light of COAH's inaction, Fair Share Housing Center (appellant)[1] filed this appeal asking that we order COAH to adopt regulations and that we bar transfer of trust funds to the State pursuant to N.J.S.A. 52:27D-329.1 to -329.3 (the 2008 amendments) to the Fair Housing Act, N.J.S.A. 52:27D-301 to -329.19 (FHA), in the interim.[2] During the

---

[1]The New Jersey State League of Municipalities and the Township of South Brunswick intervened; Affordable Housing Professionals of New Jersey was permitted to participate as amicus curiae.

[2]A second appeal (A-0122-13) — regarding COAH's failure to adopt an annual meeting schedule — was filed and consolidated with this appeal. Shortly before oral argument, we were advised the parties had settled their disputes in that appeal, which we now dismiss.

pendency of this appeal, we issued orders to fill gaps caused by COAH's inaction. More recently, despite recognizing the preference for an "administrative forum, and its special processes, for addressing constitutional affordable housing obligations," In re Adoption of N.J.A.C. 5:96 and 5:97, __ N.J. __ (2015) (slip op. at 2-3), our Supreme Court determined that because of COAH's chronic failure to adopt Third Round Rules, "there no longer exists a legitimate basis to block access to the courts," id. at __ (slip op. at 4). In light of the Court's determination and COAH's abject failure to adopt the regulations required by the 2008 amendments, we now enjoin the seizure of any trust funds by COAH or the executive branch; the future disposition of the trust funds will be directed by our courts on a case-by-case basis.

We need not canvass the earlier proceedings in this appeal except to mention that circumstances required entry of orders on July 13, 2012, and June 6, 2013,[3] dealing with the problems caused by the absence of regulations and the threat of seizure.[4]

---

[3]In the earlier stages of this appeal, the Supreme Court provided COAH with partial relief from our stay so as to allow it to "gather[] and evaluat[e] municipalities' submissions" regarding fund expenditures while leaving in place our injunction against the transfer of funds.

[4]Since the filing of the appeal, the Governor's effort to unilaterally abolish COAH was invalidated. In re Plan for
(continued)

Instead, we focus on what lies at the heart of this appeal: the 2008 amendments to the FHA. These amendments include N.J.S.A. 52:27D-329.2(a), which: first, declares that COAH "may authorize a municipality that has petitioned for substantive certification . . . to impose and collect development fees from developers of residential property"; second, provides that "[a] municipality may not spend or commit to spend any affordable housing development fees . . . without first obtaining [COAH's] approval of the expenditure"; and, third, mandated that COAH "shall promulgate regulations regarding the establishment, administration and enforcement of the expenditure of affordable housing development fees by municipalities."[5]

Of critical importance, the Legislature provided that "all fees shall be committed for expenditure within four years from the date of collection," and that "[a] municipality that fails

_____

(continued)
Abolition of Council on Affordable Hous., 424 N.J. Super. 410, 438 (App. Div. 2012), aff'd as modified, 214 N.J. 444, 479 (2013).

[5]N.J.S.A. 52:27D-329.2(c)(1) emphasizes that "[a] municipality may only spend development fees for an activity approved by the council to address the municipal fair share obligation." COAH rules were also to provide guidance for the requirement that a portion of the municipality's development fee trust fund must be set aside to provide "affordability assistance" to low and moderate income households including such items as down payment assistance, security deposit and rental assistance, low interest loans, and common maintenance expenses for condominium units. N.J.S.A. 52:27D-329.2(c)(3).

to commit to expend the balance required in the development fee trust fund by the time set forth in this section shall be required by the council to transfer the remaining unspent balance at the end of the four-year period to the 'New Jersey Affordable Housing Trust Fund,' . . . to be used in the housing region of the transferring municipality for the authorized purposes of that fund." N.J.S.A. 52:27D-329.2(d). These and other funds[6] would be deposited into a trust fund and accounted for separately and would also be subject to transfer to the State if not used within a four-year period, as follows:

> A municipality shall commit to expend collections from payments-in-lieu imposed pursuant to subsection a. of this section within four years of the date of collection. The council may extend this deadline if the municipality submits sufficient proof of building or other permits, or other efforts concerning land acquisition or project development. The council shall provide such administrative assistance as may be required to aid in the construction of affordable housing units. A municipality that fails to commit to expend the amounts collected pursuant to this section within the timeframes established shall be required to transfer any unexpended revenue collected pursuant to subsection a. of this section to the "New Jersey Affordable Housing Trust Fund," . . . to be used within the same

---

[6]Another provision allowed municipalities "to impose and collect payments-in-lieu of constructing affordable units on site upon the construction of residential development, which payments may be imposed and collected as provided pursuant to the rules of the council." N.J.S.A. 52:27D-329.3(a).

> housing region for the authorized purposes of that fund, in accordance with regulations promulgated by the council.

> [N.J.S.A. 52:27D-329.3(b) (emphasis added).]

In 2008, COAH's then-Executive Director Lucy Vandenberg wrote to all New Jersey mayors explaining these provisions and noting that COAH was authorized to promulgate regulations regarding the expenditure of development fees in the municipal trust funds. In 2012, Department of Community Affairs (DCA) Commissioner Richard E. Constable prepared amendments purporting to define when funds were considered to be expended or committed for expenditure.[7] But regulations were never adopted and, in their absence, municipalities were left to try other less formal methods, without success, including an entreaty by one group of municipalities to the Governor regarding the uncertainty presented by the status quo. Those municipalities argued that, without a clear and present understanding about the meaning and scope of "commit to expend," they would be placed in the unhappy position of committing funds while remaining liable to reimburse from their own funds or by raising taxes if COAH later devised

---

[7]This action took place during the approximately six-month period when COAH's authority had been transferred to DCA pursuant to a gubernatorial reorganization plan. We invalidated that action on March 8, 2012, Abolition of Council on Affordable Hous., supra, 424 N.J. Super. at 438; the Supreme Court affirmed that determination on July 10, 2013, Abolition of Council on Affordable Housing, supra, 214 N.J. at 479.

more stringent guidelines.[8]

As the four-year deadline approached, legislation was proposed and passed to extend the four-year deadline for two years. On June 29, 2012, the Governor vetoed that legislation and, also, line-item-vetoed language in the 2012-2013 budget, adopted as L. 2012, c. 18, which would have defined what funds were "committed" and therefore ineligible for transfer to the State. With that proposed definitional language excised, the 2012 budget bill as signed into law provided that an "amount not to exceed $200,000,000" from the municipal affordable housing trust funds and transferred to the New Jersey Affordable Housing Trust Fund as funds that have not been committed "shall be deposited in the General Fund as State revenue."

No administration action regarding the needed regulations has occurred. It also does not appear that proceedings anticipated by a 2012 resolution adopted by COAH, or proceedings in the manner tailored by our interim orders in this appeal, have commenced or proceeded to completion. And COAH has not met since October 2014. In re Adoption of N.J.A.C. 5:96 & 5:97,

---

[8]According to appellant, since July 2012, "COAH staff has only approved two municipal spending plans despite hundreds of such spending plans before it[, and] [i]n both cases, . . . these plans were only approved after litigation was filed." And, even at that, COAH still refused "to make a determination of whether such approval constituted a commitment of funds."

*supra*, __ N.J. at __ (slip at 13-14). Appellant seeks our intervention to relieve the uncertainty.

In explanation for its failure to adopt regulations, COAH claims no regulations are needed — that the 2008 amendments provide sufficient clarity. This is not a serious response to the problem at hand. The 2008 amendments required COAH to promulgate regulations to define when trust funds are "committed." The statute did not say that COAH "may" adopt regulations or that prior regulations were sufficient; the Legislature declared in N.J.S.A. 52:27D-329.2(a) that COAH "shall" promulgate regulations. COAH's own contemporaneous interpretation of the amendments, as noted earlier, revealed its understanding that new regulations were required. Its current contention — that by enacting the 2008 amendments the Legislature was not using a specialized term that needed regulatory definition and the new law set the "generous but inflexible limitation" requiring relinquishment of funds unspent or uncommitted within four years of collection — is unworthy of further discussion in a written opinion. R. 2:11-3(e)(1)(E). The simple fact is that COAH has ignored the considered wisdom of our Legislature by failing to promulgate rules. The only legitimate debate concerns the road to now be taken.

Although our authority to intervene has not been disputed,

we nevertheless iterate what is well-established: we are empowered to review not just agency action but agency inaction, Pascucci v. Vagott, 71 N.J. 40, 52 (1976); Hosp. Ctr. at Orange v. Guhl, 331 N.J. Super. 322, 329 (App. Div. 2000), and, if necessary, prevent any resulting "denial of 'fundamental procedural fairness,'" id. at 333 (quoting In re Arndt, 67 N.J. 432, 436 (1975)). COAH has not acted as required by the Legislature, and the parties have been placed in a most uncertain position with respect to these funds.

The question then is whether we should fill this vacuum by interpreting the critical provisions of the 2008 amendments and imposing our own procedures for ascertaining when funds have been committed. Despite the need for our courts to step into the fray — because COAH stepped out — we remain mindful that "[t]he judicial role here is not to become a replacement agency for COAH." In re Adoption of N.J.A.C. 5:96 & 5:9-7, supra, __ N.J. at __ (slip op. at 40). Instead, in resolving the problems caused by COAH's failures, our courts are required to resolve disputes and settle uncertainties in their usual manner and not in the manner in which administrative agencies may act. Accordingly, because of the lack of a factual record or a contested case, we reject the invitation to interpret the legislative intent embodied by the 2008 amendments or establish

procedures for suits yet to be filed.

In adhering to the Supreme Court's recent determination, we conclude that interpretation and construction of the 2008 amendments and the application or disposition of the funds in question must also now be adjudicated in our courts. To be sure, this is not the most ideal circumstance; the parties' concern that inconsistent determinations may be made by different Mount-Laurel-designated judges in different locales is by no means illusory. Ultimately, however, erroneous or inconsistent rulings can be addressed by this court or the Supreme Court through the parties' resort to the appellate process; this method may be slower and less efficient than the administrative process, see In re Adoption of N.J.A.C. 5:96 & 5:97, supra, __ N.J. at __ (slip op. at 2-3), but now, in light of the recent action taken by the Supreme Court — and barring a change in the status quo — the courts are the only available forum for addressing these matters. The issues raised in this appeal can no longer be left in COAH's moribund hands.

Absent some change in circumstances,[9] we enjoin COAH or any

---

[9]The Supreme Court observed that the action it took "does not prevent either COAH or the Legislature from taking steps to restore a viable administrative remedy that towns can use in satisfaction of their constitutional obligation." In re Adoption of N.J.A.C. 5:96 & 5:9-7, supra, __ N.J. at __ (slip op. at 47). The same holds true here.

other part of the executive branch from engaging in any further attempt to seize affordable housing trust funds. The use and disposition of those funds will hereafter be decided, in the first instance, by Mount Laurel-designated trial judges.[10]

This remedy — compelled by COAH inaction and the logical application and import of the Supreme Court's recent decision — takes effect immediately; resort to the courts on the issues stemming from COAH's inaction in this regard is subject to the same timelines and parameters contained in the Supreme Court's March 10, 2015 order. Our prior orders in this appeal, which set forth an interim procedure for COAH's disposition of affordable housing trust funds, are vacated.

So ordered. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10]Our injunction by no means forbids an appropriate body of the State from applying to the courts for forfeiture of trust funds with regard to municipalities which have, under any rational interpretation of the relevant statutory terms, failed to commit funds.