of immediate bodily harm, even in the absence of an explicit threat.

## VI.

In sum, we find defendant's arguments to be without merit, and discern no reason to disturb his conviction.

Affirmed.

138 A.3d 596

SOCIETY HILL AT PISCATAWAY CONDOMINIUM ASSOCIATION, INC., CRAIG WISDO, MICHELLE PINHEIRO, NANCY NO-VACK, DUSHYANT PATEL AND MONIKA PATEL, PLAIN-TIFFS, v. THE TOWNSHIP OF PISCATAWAY, AND THE MAY-OR AND COUNCIL OF THE TOWNSHIP OF PISCATAWAY, DEFENDANTS.

Superior Court of New Jersey
Law Division
Middlesex County

Decided February 8, 2016.

436

*Stephen M. Eisdorfer* argued the cause for plaintiffs (*Hill Wallack LLP*, attorneys; *Mr. Eisdorfer* and *Cameron W. Macleod*, on the brief).

*Michael J. Baker* and *James F. Clarkin III* argued the cause for defendants (*Hoagland, Longo, Moran, Dunst & Doukas, LLC,*

and *Clarkin & Vignuolo, LLC,* attorneys; *Mr. Baker, Anthony C. Iacocca, Rajvir S. Goomer,* and *Mr. Clarkin,* on the brief).

*Edward Purcell* argued the cause for amicus curiae New Jersey State League of Municipalities.

WOLFSON, J.S.C.

### 1. Statement of the Case

In this action, plaintiffs Society Hill at Piscataway Condominium Association, Inc. ("Society Hill") and five individual owners of real property at Society Hill (collectively, "plaintiffs") filed this motion for summary judgment against defendant Township of Piscataway ("Piscataway"), claiming that its unilateral extension of existing thirty-year deed restrictions, which sought to regulate the resale and rental prices of low and moderate income units identified in and governed by a consent order in the *Urban League* litigation [1] was unlawful. These restrictions and covenants were, by their express terms, contained in Piscataway's affordable housing plan (the "Affordable Housing Plan" or "Plan"), the Master Deed and Declaration of Restrictive and Protective Covenants of Society Hill at Piscataway Condominium (the "Master Deed") as well in each of the individual unit deeds. For the reasons set forth below, these deed restrictions, by their express terms, have expired, and as such, plaintiffs' motions for summary judgment to nullify Piscataway's unilateral attempt to extend them for an additional thirty years, is granted.

### 2. Background Information

Society Hill is an inclusionary development that was constructed more than thirty years ago pursuant to Piscataway's partial

---

[1] *Urban League of Greater New Brunswick v. Mayor and Council of the Borough of Carteret,* 142 *N.J.Super.* 11, 359 A.2d 526 (Ch.Div.1976) (Furman, J.S.C.), *rev'd,* 170 *N.J.Super.* 461, 406 A.2d 1322 (App.Div.1979), *rev'd and remanded sub nom., S. Burlington Cty. NAACP v. Twp. of Mount Laurel,* 92 *N.J.* 158, 340, 456 A.2d 390 (1983) (trial judge's opinion "rings with the true sound of the constitutional obligation").

settlement of the *Urban League* litigation. The development includes 109 low and moderate income units. With the exception of the Patels, the individual plaintiffs were deeded their respective units (each of which contained a thirty-year deed restriction limiting the resale or rental price of those units to affordable low and moderate income persons) in either 1985 or 1986.[2] In order to fully assess the various rights and obligations applicable to the owners of these units, I must first examine the procedural and legal processes that resulted in their construction.

Following the Supreme Court's remand in the *Urban League* case, various properties were rezoned throughout Middlesex County. In particular, one of these sites, in Piscataway, was acquired by K. Hovnanian, which sought site plan approval to build an inclusionary development. As a condition of site plan approval, an Affordable Housing Plan was adopted which, in pertinent part, stated:

> Covenants Running With Land. The provisions of this Affordable Housing Plan shall constitute covenants running with the land with respect to each Affordable Condominium affected hereby, and shall bind all purchasers of each such Unit, their heirs, assigns and all persons claiming by, through or under their heirs, executors, administrators and assigns. The terms, restrictions and covenants of this Plan shall, however, automatically expire and terminate at the earliest of the following: (1) thirty (30) years from the date hereof; and (2) the date upon which the event set forth in paragraph 13 hereinafter shall occur; and (3) the date upon which the association dissolves or ceases to exist for any period of time for any reason, in which case, an instrument executed by the Association evidencing same must be duly recorded with the Office of the Clerk of Middlesex County.

That Affordable Housing Plan required that the Master Deed, and each of the individual deeds transferring ownership rights to any of the 109 affordable housing units, incorporate that same covenant, and required further that every prospective buyer be given a disclosure statement informing them of the specific terms, restrictions, provisions, and covenants referenced in the Plan and in the Master Deed.

---

[2] Dushyant and Monika Patel acquired their unit in 2013.

After the Affordable Housing Plan was fully implemented, Judge Serpentelli (one of the three trial judges specifically appointed by the Chief Justice to handle all *Mt. Laurel* litigation), memorialized Piscataway's settlement with the Urban League in an order dated July 17, 1985. As a consequence, Piscataway received, and has continued to receive, credit for each of the 109 affordable housing units against its then extant fair share: "The Township of Piscataway shall receive full credit towards its fair share obligation for the fifty-five moderate income homes and the fifty-four low income homes which are to be built as part of the development known as Society Hill."

Thereafter, the builder executed and recorded a Master Deed, which expressly incorporated by reference the thirty-year deed restriction and covenant limiting the resale and rental prices on those units so as to maintain their continued occupancy by low and moderate income persons:

> The terms, restrictions, provisions and covenants of the Affordable Housing Plan, and the provisions of the Master Deed referring to and incorporating the Affordable Housing Plan, shall automatically expire and terminate at the earliest of the following: (1)—thirty (30) years from the date of the Affordable Housing Plan; and (2) the date upon which the right of redemption expires with respect to the foreclosure of the first mortgage lien upon an Affordable Condominium by the first mortgagee of the Affordable Condominium as the Plan applies to the specific unit which is subjected to a foreclosure pursuant to this provision; and (3) the date upon which the Society Hill at Piscataway Condominium Association, Inc. creases [sic] to exist or dissolve for any reason and for any period of time. Neither the Developer, the Owner, the Association nor the Agency shall amend or alter the provisions of this paragraph without first obtaining the approval of both the Agency and the Planning Board of the Township of Piscataway. Any such approved amendments or modifications of this plan shall be in writing and shall contain proof of Planning Board approval and shall not be effective unless and until recorded with the Middlesex County Clerk.

Consistent with these restrictions, each deed of conveyance, likewise referred to, incorporated by reference, and included that thirty-year deed restriction:

> WHEREAS, certain specified condominium (hereinafter 'Affordable Condominiums') within Society Hill at Piscataway Condominiums are subject to the terms, provisions and restrictions contained in both the Master Deed and Declaration of Restrictive and Protective Covenants of Society Hill at Piscataway Condominiums, recorded on October 15, 1985, in the Middlesex County Clerk's Office in Deed Book

3468, Page 774 et seq. and the terms, provisions and restrictions contained in the Affordable Housing Plan for Society Hill at Piscataway (hereinafter 'Plan') recorded on Oct. 15, 1985, in the Middlesex County Clerk's Office in Deed Book 3468, Page 891 et seq.

On July 17, 1989, the Council on Affordable Housing (COAH) adopted its first recapture regulation (the "95/5 Rule") preventing the purchaser of an affordable housing unit from reaping a windfall after the expiration of their respective controls, and that recapture mechanism has remained in place through COAH's adoption of the 2001 Uniform Housing Affordability Controls (UHAC) regulations and its 2004 amendments.[3]  *See* 21 *N.J.R.* 2021 (July 17, 1989) ("In reviewing the rules as proposed, the Council has determined a need for clarification of proposed *N.J.A.C.* 5:92–12.1. As the section heading indicates, this rule applies to *newly constructed* sales units.  To affirm this application, the Council is changing the term "low and moderate income units" to *"newly constructed low and moderate income sales units "* (emphasis added)).  The current version of the UHAC regulations, *N.J.A.C.* 5:80–26.25, provides in pertinent part that "[a] municipality shall have the right to determine that the most desirable means of promoting an adequate supply of low-and moderate-income housing is to prohibit the exercise of the repayment option and maintain controls on lower income housing units sold within the municipality beyond the period required by *N.J.A.C.* 5:93–9.2."

In an effort to ensure the continuing availability of these units to low and moderate income families, and desirous of retaining credits for them, the Township, on December 8, 2012, nearly thirty years after the first of these affordable housing units were constructed and sold, adopted an ordinance that purported to authorize the Township to "extend" the affordable housing resale controls for another thirty years, presumably pursuant to *N.J.A.C.*

---

[3] As explained in more depth below, the UHAC regulations supplanted the COAH regulations in order to remedy inconsistent or conflicting regulatory schemes on the resale and rental controls. *See In re Adoption of Uniform Hous. Affordability Controls,* 390 *N.J.Super.* 89, 95–96, 914 A.2d 402 (App.Div.2007).

5:97–6.14(a) ("A municipality may address a portion of its growth share obligation through the extension of affordability controls in accordance with *N.J.A.C.* 5:97–9 and UHAC"); *see also N.J.A.C.* 5:80–26.25 (a municipality may maintain controls on lower-income houses in accordance with the COAH regulations permitting length of control deed restrictions on newly constructed units).

To implement its goal of "recapturing" the "expiring" affordable units, on July 14, 2014, the Township filed and recorded a "Declaration of Restrictive Covenant," which states:

NOW, THEREFORE, BE IT RESOLVED by the Declarant declares [sic] that the Units [at Society Hill] shall be held, transferred, conveyed, leased, occupied and used subject to the following restrictions and conditions:

1. Pursuant to N.J.A.C. 5:97–6.14(b)(2)(Extension of Expiring Controls), *the Controls on the Units are extended until June 7, 2045, in accordance with the Uniform Housing Affordability Controls ("UHAC");*

2. During this period of Extended Controls no seller of any of the one hundred nine (109) Units may utilize the Repayment Option as permitted by N.J.A.C. 5:93–9.8[sic]; specifically, the Repayment Option shall not be permitted for any of the Units from the date of recordation of this instrument until June 7, 2045;

3. The Controls are extended until June 7, 2045, and during this period of extended Controls, no seller of any of the one hundred nine (109) Units may utilize the Repayment Option as permitted by N.J.A.C. 5:93–9.8.

4. The sale and use of the Units is governed by UHAC, found in the New Jersey Administrative Code at Title 5, Chapter 80, subchapter 26 (N.J.A.C. 5:80–26.1 et seq., the "Regulations") and any amendment, changes or supplements thereto.

5. All of the restricted Units shall remain subject to the requirement of N.J.A.C. 5:80–26.25, as may be amended and supplemented from time to time, during the extended Control period until Piscataway Township elects to release the Units from such requirements.

Any conveyance of the Property or the individual Units named herein shall contain a disclosure setting forth the existence of this Declaration. Each Unit owner is required to fully comply with the Affordability Controls originally placed on the Units which were extended by Resolution No. 13–459. The restrictions set forth in this Declaration shall run with the land and be binding upon the owners of the Units, and their successor, assigns and heirs, as set forth herein. Failure to comply with the extended Deed Restrictions shall subject the Owner(s) and/or Transferor(s) of any of the Units to any and all penalties permitted by law.

[Emphasis in original.]

If valid, Piscataway's extension of the initial thirty-year deed restrictions would put a cloud on their titles and preclude all

plaintiffs from freely marketing their units, in terms of price and occupancy.

### 3. Discussion

In their motion, plaintiffs argue that Piscataway's extension of the deed restrictions for an additional 30 years violates their legal rights and constitutes a cloud on their respective titles. Piscataway disagrees and contends instead that it was lawfully empowered to implement extended controls on those units in order to ensure an adequate supply of low- and moderate-income housing based on: (1) the UHAC, *N.J.A.C.* 5:80–26.1 to –26.26, which was enacted "to ensure that affordable housing units restricted to persons with low or moderate incomes (restricted units) would remain occupied by persons meeting those income levels," *In re Adoption of Uniform Hous. Affordability Controls, supra,* 390 *N.J.Super.* at 96, 914 *A.*2d 402; and (2) this state's strong constitutional and public policy imperatives, which compel municipalities to provide their respective fair share of affordable housing. *See S. Burlington Cty. N.A.A.C.P. v. Twp. of Mount Laurel,* 67 *N.J.* 151, 336 *A.*2d 713 (1975) (hereinafter *"Mount Laurel I "*); *S. Burlington Cty. N.A.A.C.P. v. Twp. of Mount Laurel,* 92 *N.J.* 158, 456 *A.*2d 390 (1983) (hereinafter *"Mount Laurel II "*); *Hills Dev. Co. v. Twp. of Bernards,* 103 *N.J.* 1, 20, 510 *A.*2d 621 (1986) (hereinafter *"Mount Laurel III"*); and *In re N.J.A.C. 5:96 & 5:97,* 221 *N.J.* 1, 110 *A.*3d 31 (2015) (hereinafter *"Mount Laurel IV "*).

Urging traditional notions of deference, the Township insists that the UHAC regulations permit it to override and extend, retroactively, the thirty-year limitations contained in plaintiffs' original deeds.

### a. The Township's Purported Reservation of a Unilateral Right to Amend or Modify the Covenants

As a preliminary matter, Piscataway contends that it "reserved" the right to amend or modify the covenants unilaterally, reasoning that the relevant documents, when read as a whole, allow for such an interpretation, and thus, sanction its actions. In

response, plaintiffs strongly urge that no such express or implied grant of power exists, and that the Township's unilateral attempt to extend the resale and rental controls was a nullity and ultra vires.

Addressing each contention in order, the Township posits that its Affordable Housing Plan makes all deed restricted units, including those of the plaintiffs, subject not only to the rules and regulations of the Township's Affordable Housing Agency, but also to those of COAH and HMFA. I cannot agree.

That plan provides, in pertinent part:

In addition to the foregoing restrictions, the resale of Affordable Condominiums shall be subject to the rules and regulations of the Affordable Housing Agency which shall be established by the Township of Piscataway. This Agency shall monitor and approve resales of Affordable Condominiums to assure that purchasers of same shall be Lower Income Purchasers as defined by the Agency's Income criteria in effect at the time of the proposed sale.

Contrary to the Township's urging, the phrase "Affordable Housing Agency" is unquestionably limited to the Township's agency, and not to any agency of the State, since it refers only to an agency "established by the Township of Piscataway." Nor does that document include any express grant or reservation of authority, which might permit the Township to unilaterally extend the deed restrictions whose genesis was the *Urban League* litigation.

The Township next references the Master Deed, which states:

Neither the Developer, the Owner, the Association nor the Agency shall amend or alter the provisions of this paragraph without first obtaining the approval of both the Agency and the Planning Board of the Township of Piscataway. Any such approved amendments or modifications of this plan shall be in writing and shall contain proof of Planning Board approval and shall not be effective unless and until recorded with the Middlesex County Clerk.

That provision, likewise, does not explicitly authorize any amendment to the restrictive covenants. Instead, it simply acknowledges, rather unremarkably, the Township's right to pursue amendments to the Affordable Housing Plan as distinct from and unrelated to the terms of the Master Deed and individual deeds, which contain the resale controls.

Next, the Township argues that the *Urban League* consent order itself sanctions its efforts to extend the deed restrictions. I do not agree. That consent order merely formalizes the "notice" procedures that must be followed if any application to amend or revise any of the development approvals of the Township's Affordable Housing Plan is submitted:

> Piscataway shall serve notice upon the Urban League plaintiffs in the event that an application to amend or revise the approvals or the Affordable Housing Plan for Society Hill at Piscataway is submitted to the Planning Board ... within ten (10) business days of the filing of such applications.

At best, the provisions cited by Piscataway are silent on whether the Township specifically reserved the authority to unilaterally extend the resale and rental controls. I am, therefore, unwilling to rewrite the documents to include such a reservation.

### b. The UHAC Regulations Do Not Permit Piscataway to Extend the Resale and Rental Controls Of Plaintiffs' Units

In 1985, the Legislature enacted the Fair Housing Act ("FHA"), *N.J.S.A.* 52:27D–301 to –329, to confer responsibility for the administration and enforcement of the *Mount Laurel* doctrine upon a state administrative agency. This obligation requires municipalities to provide a realistic opportunity, through their land use regulations, for the construction of their respective fair share of affordable housing for lower and moderate income households. *See Mount Laurel I, supra,* 67 *N.J.* at 151, 336 *A.*2d 713; *Mount Laurel II, supra,* 92 *N.J.* at 158, 456 *A.*2d 390; *Mount Laurel III, supra,* 103 *N.J.* at 20, 510 *A.*2d 621; and *Mount Laurel IV, supra,* 221 *N.J.* at 1, 110 *A.*3d 31.

The FHA vests COAH with primary jurisdiction over the implementation and administration of the *Mount Laurel* doctrine. *See Mount Laurel III, supra,* 103 *N.J.* at 32, 510 *A.*2d 621; *Holmdel Builders Ass'n v. Twp. of Holmdel,* 121 *N.J.* 550, 576, 583 *A.*2d 277 (1990) ("It cannot be overstressed that the Legislature, through the FHA, intended to leave the specific methods of compliance with *Mt. Laurel* in the hands of COAH and the

municipalities, charging COAH with the singular responsibility for implementing the statute and developing the state's regulatory policy for affordable housing"). This is so, even though COAH has, for all intents and purposes, ceased to function over the past several years. *See In re Monroe Twp. Hous. Element,* 442 *N.J.Super.* 565, 569, 577–78, 581, 125 *A.*3d 760 (Law Div.2015); *see also In re Failure of the Council on Affordable Hous. to Adopt Trust Fund Commitment Regulations,* 440 *N.J.Super.* 220, 225, 112 *A.*3d 595 (App.Div.2015).

Prior to 2001, three separate state agencies—COAH, the HMFA, and the Department of Community Affairs ("DCA")— "adopted distinct sets of rules establishing controls on the continuing affordability of housing constructed pursuant to the FHA," which, predictably, resulted in confusion and inconsistent results. *In re Adoption of Uniform Hous. Affordability Controls, supra,* 390 *N.J.Super.* at 95–96, 914 *A.*2d 402. To avoid inconsistent and/or overlapping regulations, the HMFA repealed its original set of regulations and, in 2001, promulgated the UHAC regulations, thus specifically amending and superseding any contrary rules promulgated by either COAH or the DCA.[4] *Id.* at 96, 914 *A.*2d 402. In 2004, the HMFA adopted its most current iteration of the UHAC regulations, which have become the definitive regulations pertaining to affordability controls on low and moderate income units. *Ibid.*

In construing New Jersey regulations, the courts must do so "in the same manner that [they] would interpret a statute." *U.S. Bank, N.A. v. Hough,* 210 *N.J.* 187, 199, 42 *A.*3d 870 (2012); *see Bedford v. Riello,* 195 *N.J.* 210, 221–222, 948 *A.*2d 1272 (2008). The paramount goal is to ascertain the intent of the drafter. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). To

---

[4] The UHAC regulations were subsequently ratified and adopted by both COAH and the DCA. *See In re Adoption of Uniform Hous. Affordability Controls, supra,* 390 *N.J.Super.* at 96–97, 914 *A.*2d 402; *N.J.A.C.* 5:93–9.17; and *N.J.A.C.* 5:43–4.10.

that end, the intent of the drafter may often be found in the actual language of the enactment. *U.S. Bank, N.A., supra,* 210 *N.J.* at 199, 42 *A.*3d 870. A court should not "rewrite a plainly-written enactment," *see DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039 (internal quotation marks omitted), nor should it "engage in conjecture that will subvert its plain meaning." *U.S. Bank, N.A., supra,* 210 *N.J.* at 199, 42 *A.*3d 870. "Only when a fair 'reading of the enactment leads to more than one plausible interpretation' do we look to extrinsic evidence." *Ibid.* (quoting *Bedford, supra,* 195 *N.J.* at 222, 948 *A.*2d 1272).

■ While no court has yet construed the reach of *N.J.A.C.* 5:80–26.1 to –26.26 in the context of extending resale and rental controls, it is plain that the UHAC regulations were "designed to implement the [FHA] by assuring that low- and moderate-income units *created under the Act* are occupied by low- and moderate-income households for an appropriate period of time." *N.J.A.C.* 5:80–26.1 (emphasis added); *see also In re Adoption of Uniform Hous. Affordability Controls, supra,* 390 *N.J.Super.* at 95–96, 914 *A.*2d 402 (prior to 2001, the three state agencies each promulgated a distinct set of regulations "establishing controls on the continuing affordability of housing *constructed pursuant to the FHA*").

In the matter before me, none of plaintiffs' units were constructed or approved by COAH after July 17, 1989, which is when the recapture regulation was first adopted, nor were any of those units constructed pursuant to a housing plan approved by COAH after that date. Instead, each of the affordable housing units at issue in this case was constructed much earlier, pursuant to the *Urban League* litigation. Likewise, all of the relevant documents relating to the deed restrictions pre-date the enactment of the FHA and its implementing regulations. Inasmuch as none of the Society Hill units were constructed pursuant to, or under the auspices of, COAH or the FHA, the UHAC regulations do not apply to them as a matter of law.

Even if the UHAC regulations did control, however, their application would not yield a contrary result. The evolution of

these regulations confirms such a conclusion. Prior to its voluntary adoption of the UHAC regulations in 2001, COAH had enacted its own "length of controls" regulations (in 1989), which authorized municipalities to impose deed restrictions on affordable housing units. Those regulations provided:

> In developing housing elements, municipalities shall determine measures to assure that *newly constructed* low and moderate income sales units remain affordable to low and moderate income households for an appropriate period of not less than 30 years. The administrative entity shall do so by requiring all conveyances of *newly constructed* low and moderate income sales units subject to the Act, to contain the deed restriction and mortgage lien adopted by the Council.
>
> [*N.J.A.C.* 5:93–9.2(a) (emphasis added) ].

As contemplated by COAH, municipalities were clearly empowered to impose deed restrictions, but only on *newly constructed* low and moderate income units subject to the FHA. The imposition of affordability controls on homes constructed *prior to* the enactment of the FHA itself, *were not* encompassed within the regulation and would, therefore, have been excluded from its reach. *See* 21 *N.J.R.* 2021 (July 17, 1989) (stating that the deed restrictions were intended to apply to *"newly constructed"* low and moderate income units); *see also* 36 *N.J.R.* 5095(a) (November 15, 2004) (stating that the 2004 UHAC regulations "provide mechanisms for the 30–year deed restrictions to be continued for new units. *The Council cannot, however, retroactively change an existing deed restriction"*) (emphasis added).

However, even though the COAH and UHAC regulations are not *expressly* limited to newly constructed units, any such unit that was deed restricted pursuant to COAH's grant of substantive certification, or any court judgment, grant agreement or contract prior to December 20, 2004, would, in any event, still be exempt under *N.J.A.C.* 5:80–26.5(a)(2). That regulation provides:

> (a) Each restricted ownership unit shall remain subject to the requirements of this subchapter until the municipality in which the unit is located elects to release the unit from such requirements pursuant to action taken in compliance with (g) below. Prior to such a municipal election, a restricted ownership unit must remain subject to the requirements of this subchapter for a period of at least 30 years; *provided, however, that:*
>
> . . . .

2. Any unit that, *prior to December 20, 2004,* received substantive certification from COAH, was part of a judgment of compliance from a court of competent jurisdiction or became subject to a grant agreement or other contract with either the State or a political subdivision thereof, *shall have its control period governed by said grant of substantive certification, judgment or grant agreement or contract*
. . . .

[Emphasis added.]

Indeed, the HMFA itself echoes and buttresses this conclusion as well: "units whose control periods are governed by substantive certification, agreement or contract, and 95/5 units,[5] have their control periods set by legal standards or decisions outside of the scope of these rules and *cannot be overridden.*" 36 *N.J.R.* 5713(a) (December 20, 2004) (emphasis added); *see also* 33 *N.J.R.* 248(a) (Jan. 16, 2001) ("*N.J.A.C.* 5:80–26.1 also provides, however, that any unit subject to a grant agreement or other contract with either the State or a political subdivision thereof, in effect on or before January 1, 2001, and which provides for a control period different from that specified in the Uniform Controls shall have its control period governed by said grant agreement or contract").

The language of *N.J.A.C.* 5:80–26.5 is plain and unambiguous. Its drafters expressly intended *to exclude* any unit whose control period was created or governed by a "grant of substantive certification, judgment or grant agreement or contract" *prior to December 20, 2004.*[6] Since the control periods at Society Hill were established prior to that date, plaintiffs' units all qualify for the "carve out" in *N.J.A.C.* 5:80–26.5(a), and as such, the Township lacked legal authority, under either the UHAC or the COAH regulations, to unilaterally extend the resale and rental controls on their units.

[5] A "95/5 unit" is "a restricted ownership unit that is part of a housing element that received substantive certification from COAH pursuant to *N.J.A.C.* 5:93 before October 1, 2001." *N.J.A.C.* 5:80–26.2.

[6] Additionally, plaintiffs' units were not constructed or approved by COAH prior to January 1, 2001—the date set forth in the 2001 UHAC regulations, or even July 17, 1989—the date that COAH first enacted regulations providing for a recapture of deed-restricted affordable units.

■ Absent "changed circumstances" making adherence to a duly recorded covenant impractical, or evidence that such a deed restriction (as originally enacted) was, or has become, illegal or void against public policy, no party may unilaterally amend the terms of a covenant running with the land. *See Am. Dream at Marlboro, LLC v. Planning Bd. of Twp. of Marlboro*, 209 *N.J.* 161, 169, 35 *A*.3d 1198 (2012); *see also Citizens Voices Ass'n v. Collings Lakes Civic Ass'n*, 396 *N.J.Super.* 432, 446, 934 *A*.2d 669 (App.Div. 2007). Since there has been no such showing, the Township's attempts to extend and limit the marketability of plaintiffs' units to low and moderate income persons, are void, unenforceable, and of no force and effect.[7]

My conclusion that the Township's actions are void as to all plaintiffs, does not, however, afford the Patels relief from their deed restriction. Unlike the other plaintiffs, (whose resale and rental controls were extended without their consent), the Patels, prior to the purchase of their unit in 2013, purportedly voluntarily agreed to, and their deed specifically reflects, an extension of resale and rental controls on their unit for an additional thirty years. That extension may, in fact, be legally and/or equitably enforceable, and places them in a different position from the other plaintiffs. Since the UHAC regulations do not preclude a voluntary extension of affordability controls through additional deed restrictions, I am unwilling to interfere with or invalidate them absent proof of duress, undue influence, or some other recognized basis upon which they would legally or equitably be relieved of this burden.

Inasmuch as the Patels' complaint essentially seeks a reformation of their deed, relief from the specific price and occupying restrictions contained therein, and an order enjoining the Township from enforcing those deed restrictions, their claims require

---

[7] Because I have determined Piscataway's actions have been ultra vires and void as a matter of regulatory and statutory interpretation, I need not address whether retroactive application of the regulations is permitted or whether the Township has violated either the New Jersey or United States Constitutions.

proofs that are different from the other plaintiffs and are primarily equitable in nature. As such, their complaint and cause of action will be severed from this litigation (*see R.* 4:38–2), transferred to the Chancery Division, and assigned a new docket number. *Rendine v. Pantzer,* 141 *N.J.* 292, 310–11, 661 *A.*2d 1202 (1995) (trial court may, in its discretion, sever claims of multiple plaintiffs where there are different incidents and circumstances); *see also Innes v. Marzano–Lesnevich,* 435 *N.J.Super.* 198, 245, 87 *A.*3d 775 (App.Div.2014) (a court retains discretion to order severance of unrelated claim *sua sponte,* for the convenience of all parties), *aff'd in part, mod. in part, remanded in part,* 220 *N.J.* 37, 101 *A.*3d 1078 (2016); *Wacker–Ciocco v. Government Emps. Ins. Co.,* 439 *N.J.Super.* 603, 610–11, 110 *A.*3d 962 (App.Div.2015) (severance permitted in the court's discretion).[8]

### 4. Conclusion

After carefully examining the evolving regulatory framework leading to the ultimate adoption of the UHAC regulations, I am satisfied that the Township's attempts to extend the thirty-year resale and rental restrictions in plaintiffs' deeds for an additional thirty-year period was beyond its authority and was, accordingly, unlawful, of no effect, and ultra vires. The applicable resale controls established by the *Urban League* consent order and contained in: (1) Piscataway's original affordable housing plan; (2) the project's master deed; and (3) each unit deed, were not subject to unilateral modification. As such, the thirty-year deed restrictions extending resale and rental prices to those units affordable to low and moderate income persons expired as to all plaintiffs, except the Patels, and are of no further force and effect.

An order granting final judgment to this effect and incorporating this opinion by reference, will be entered simultaneously herewith.

---

[8] Accordingly, a separate order directing a severance and transfer to the Chancery Division has been entered simultaneously with the issuance of this opinion.