**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2167-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TATIANA REITER, an individual,
and WYECZESLAV RAYTER,
an individual,

     Defendants-Appellants.

_____

> Argued December 10, 2019 – Decided January 15, 2020
>
> Before Judges Yannotti, Hoffman and Firko.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000071-17.
>
> John M. Mills, III, argued the cause for appellants (Mills & Mills, PC, attorneys; John M. Mills, III, of counsel and on the briefs).
>
> Lori D. Reynolds argued the cause for respondent (O'Donnell McCord, PC, attorneys; Arthur J. Timins, of counsel and on the brief; Lori D. Reynolds, on the brief).

PER CURIAM

Defendants Tatiana Reiter and Wyeczeslav Rayter appeal from an order entered by the Chancery Division on December 11, 2018, finding Reiter violated affordability controls and deed restrictions applicable to their affordable housing unit, a condominium located in the Township of East Hanover (Township). The trial court also determined that the Township's method of extending the affordability controls and deed restrictions complied with N.J.A.C. 5:80-26.25(a) and (b). We affirm the trial court's rulings on these issues. However, as to the trial court's ruling that Reiter forfeits her interest in the property and the Township now owns her interest as a tenant by the entirety, we reverse and remand.

I.

The material facts taken from the trial record relating to the December 11, 2018 order are generally undisputed. Defendants, as husband and wife, purchased an affordable housing unit in the Hanover Park condominium complex in the Township on June 5, 1996. They signed a Unit Deed, which incorporated the complex's Master Deed, that states the property is subject to resale and rental controls under the Fair Housing Act (FHA), N.J.S.A. 52:27D-

2

301 to -329.19, regulations adopted by the Council on Affordable Housing (COAH), and Township ordinance 15-1989.

Both the Unit Deed and the Master Deed limited defendants' ability to sell the property for the first twenty years after their initial occupancy. The Unit Deed states:

> During the first twenty years after initial occupancy the unit [can] only [sic] be sold to a low[-] or moderate [-]income family, as appropriate, in accordance with the above statutes and regulations.

Similarly, the Master Deed states:

> Owners of the Affordable Condominiums shall not convey title to or by lease or otherwise deliver possession of the Affordable Condominiums other than in accordance with the [FHA] and regulations of the [COAH] and Township of East Hanover.
>
> . . . .
>
> The terms, restrictions, provisions, and covenants of the [FHA] and related regulations, and the provisions of the Master Deed referring to and incorporating the [FHA], shall automatically expire and terminate at the earlier of the following: (1) twenty (20) years from the issuance of a certificate of occupancy on the Unit; and (2) the date upon which the right of redemption expires . . . ; and (3) the date upon which the Association dissolves . . . .

The Unit Deed states that defendants must occupy the unit as their primary residence, in accordance with all applicable lease provisions, including their

3

Affordable Housing Agreement (AHA) restrictions. The terms, restrictions, and covenants of the AHA apply for the determined period unless "extended by municipal resolution . . . . Such municipal resolution shall provide for a period of extended restrictions and shall be effective upon filing with [COAH] and the Authority." The Unit Deed further provides, "Neither the Owner nor the Authority shall amend or alter the provisions of this [AHA] without first obtaining the approval of the other party[,]" unless a municipal resolution extends the restrictions. In April 2002, the parties separated, and Reiter moved to a home in Livingston purchased by the parties.

On April 14, 2014, the Township extended the affordability controls and deed restrictions governing the property by issuing a Declaration of Restrictive Covenant (Declaration) and adopting Resolution 71-2014 (Resolution). The Declaration provided that "the deed restrictions on the units have been extended, and the units are subject to extended affordability controls limiting the sale, use and re-sale of the units" for a period of thirty years. Thus, the restrictions on defendants' property, which expired in 2016, would remain in effect for another three decades.

Shortly thereafter, plaintiff began investigating whether the Hanover Park unit was defendants' primary residence. On June 3, 2016, an anonymous letter

A-2167-18T3

prompted an investigation into defendants' residency, and possible AHA violations. The letter stated:

> I am a resident of Hanover Park condos in East Hanover NJ[.]
>
> This letter is to notify you that the owners of the property located at . . . in East Hanover NJ [have been] renting [their] unit for more than [ten] years. This is a housing affordable unit. Owners of this property moved to a different town and according to the Housing Affordable regulations[,] this type of unit cannot be rented for income [purposes].
>
> I am hereby requesting that you review [the] above information and take any necessary action if necessary[.]

On June 7, 2016, the Housing Affordability Service Compliance Officer, responsible for administering affordability controls, sent defendants a letter, notifying them to submit a signed and dated written request to start the affordable resale process, triggered by their purchase of another property. The letter explained "Affordable Housing Regulation stipulates that these units must be occupied as the primary residence of the owner(s)" and that "East Hanover has an interest in maintaining the affordable restrictions on [their] property and keeping [their] unit in compliance with . . . regulations by ensuring it is owner-occupied or sold to another income-qualified household."

A-2167-18T3

Township police performed two on-site inspections of the property. The police did not find Rayter's vehicle at the premises either time, but instead, found two different vehicles parked in defendants' reserved spaces. They found evidence that defendants' son was living at the property with his wife and children. Rayter claimed his son's family lived with him at the property for some time until defendants acquired a third property in East Hanover around 2017.

Defendants failed to respond to the Township's inquiry. On September 19, 2016, the Township served defendants with a detailed, written notice of the alleged breaches of their deed restrictions. The notice cited defendants' violations as "fail[ing] to occupy the above-referenced affordable housing unit as your primary residence" and "improperly leas[ing it] for residential purposes, without first obtaining written approval from . . . East Hanover." The relevant section of the signed AHA, Section VIII(A) "Owner Responsibilities," and the thirty-year extension, making the restrictions applicable past June 2016, were included in the notice. The Township demanded immediate remediation of the violations. Defendants failed to remediate.

Thereafter, on February 6, 2017, defendants were served with eight summonses, alleging violations of the Township's Code. Four were issued

against each defendant relating to improperly leasing the affordable unit and failing to occupy the unit as their primary residence. On September 20, 2017, the Township filed a verified complaint alleging violations of the State's regulations governing affordable housing.

N.J.S.A. 2A:58-11(a) provides "If a statute or ordinance allows a court action to impose a civil penalty . . . an action to impose a penalty shall be brought as provided by this section." The Township's zoning ordinance, § 95-46.2(P)(2)(a) (1979) provides "The municipality may file a court action pursuant to N.J.S.A. 2A:58-11 alleging a violation, or violations, of the regulations governing the affordable housing unit."

In response to the complaint, Rayter certified that he continuously resided at the Hanover Park address since 1996, and only his wife and children lived at the property during that time. Despite owning three other residential properties during the same period, Rayter maintained he never resided anywhere else, never leased the property to anyone, and complied with all restrictions. However, Rayter admitted his wife, Reiter, moved out of the unit several years

previously and never returned. The Township moved to transfer the matter from municipal court to the Superior Court.[1]

At the October 15, 2018 bench trial, the judge found that the Township lawfully extended the affordability controls and found no evidence defendants had been leasing the property to others. The judge dismissed the complaint with prejudice against Rayter, concluding the Hanover Park unit was his primary residence since the property was acquired on June 5, 1996.

However, as to Reiter, the judge found she moved out of the Hanover Park unit in 2002 and has not used the property as her primary residence since that time, in violation of the FHA. Accordingly, the judge terminated Reiter's interest in the Hanover Park unit and transferred her interest to the Township, as a tenant by the entirety with Rayter. Therefore, Rayter's interest in the property remained unaffected and wholly intact. The judge ruled that if Reiter predeceases Rayter, the Township has no interest in the property. However, in the event Rayter dies first, the Township will own the property.

On appeal, defendants make four arguments, one of which they never raised before the trial judge. Defendants contend the judge erred in holding that

---

[1] The Township was plaintiff in the municipal court proceeding and the State became plaintiff when the matter was transferred to the Superior Court.

A-2167-18T3

the affordability controls and deed restrictions governing the unit should not expire on the date set forth in the AHA, and by ordering a partition of the property, which foreclosed Reiter's interest as a tenant by the entirety and transferred it to plaintiff. For the first time on appeal, defendants argue that the judge's remedy constitutes an unconstitutional regulatory taking in violation of the New Jersey and United States Constitutions.

## II.

We note that factual determinations "made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (citing In re Trust Created by Agreement Dated Dec. 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)). We will not "disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting In re Trust, 194 N.J. at 284).

The trial court's decisions on issues of law are, however, subject to plenary review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "A trial court's interpretation of the law and the legal consequences

that flow from established facts are not entitled to any special deference." Ibid. (citations omitted).

We first address defendants' argument that the Township's unilateral extension of the initial June 4, 2016 expiration date by way of Declaration and Resolution exceeded its powers. Defendants contend that since they acquired the Hanover Park unit prior to December 20, 2004, they are subject to N.J.A.C. 5:80-26.5(a)(2), which states that "[a]ny unit that, prior to December 20, 2004, received substantive certification from COAH, was part of a judgment of compliance . . . or became subject to a grant agreement or other contract with either the State or a political subdivision thereof, shall have its control period governed by said grant of substantive certification, judgment or grant agreement or contract . . . ." Therefore, defendants contend their unit is only subject to the twenty-year control period set forth in the Unit and Master Deeds. We disagree.

Defendants' unit was constructed and conveyed to them pursuant to FHA guidelines, New Jersey law, and ordinances governing low income properties. Significant development of New Jersey law on affordable housing began with the Supreme Court's decisions in S. Burlington County NAACP v. Twp. of Mt. Laurel, 67 N.J. 151 (1975) (Mount Laurel I) and S. Burlington County NAACP v. Twp. of Mt. Laurel, 92 N.J. 158 (1983) (Mount Laurel II). In those decisions,

the Supreme Court recognized that "every municipality in a growth area has a constitutional obligation to provide[,] through its land use regulations[,] a realistic opportunity for a fair share of its region's present and prospective needs for housing for low[-] and moderate[-]income families." N.J.S.A. 52:27D-302(a).

While our Court exercised its judicial power to assert municipal "regulations that do not provide the requisite opportunity for a fair share of the region's need for low and moderate income housing conflict with the general welfare and violate the state constitutional requirements of substantive due process and equal protection[,]" Mount Laurel II, 92 N.J. at 208-09 (citing Mount Laurel I, 67 N.J. at 174, 181), the Court also determined that "the methods for satisfying this constitutional obligation [are] better left to the Legislature . . . ." N.J.S.A. 52:27D-302(b) (internal quotations omitted). Accordingly, the New Jersey Legislature adopted the FHA.

The FHA was created to administer and enforce the Mount Laurel doctrine "in the public interest[,] in that it comprehends a low[-] and moderate[-]income housing planning and financing mechanism in accordance with regional considerations and sound planning concepts which satisfies the constitutional obligation enunciated by the Supreme Court." N.J.S.A. 52:27D-303. To

facilitate and implement the FHA's goals, our Legislature created the administrative body, COAH. N.J.S.A. 52:27D-305. COAH is charged with the responsibility for determining municipal affordable housing obligations under the FHA and adjusting a municipalities' fair share over time given changes in vacant land, infrastructure, environment, and other considerations. N.J.S.A. 52:27D-307.

Under the FHA, the Housing and Mortgage Finance Agency (HMFA) was created to "establish affordable housing programs to assist municipalities in meeting the obligation of developing communities to provide low and moderate income housing." N.J.S.A. 52:27D-321. The agency "establish[es] procedures and guidelines governing the qualifications of applicants, the application procedures and the criteria for awarding grants and loans for affordable housing programs and the standards for establishing the amount, terms and conditions of each grant or loan." N.J.S.A. 52:27D-321(e).

In 2001, the agency created regulations on the use and sale of affordable housing units known as the Uniform Housing Affordability Controls (UHAC). N.J.A.C. 5:80-26.1 to -26.26. UHAC regulations "assur[e] that low- and moderate-income units created under the Fair Housing Act are occupied by low- and moderate-income households for an appropriate period of time." N.J.A.C.

5:80-26.1. By 2004, UHAC regulations became the definitive regulations on affordability controls of low- and moderate-income units. In re Adoption of Uniform Hous. Affordability Controls, 390 N.J. Super. 89, 96 (App. Div. 2007).

Defendants rely on the decision in Society Hill, 445 N.J. Super. 435, asserting that the language in that case "exactly mirrors (except in duration)" the language of the Master Deed in this matter. In Society Hill, a condominium association and five individual owners filed for summary judgment against the Township of Piscataway, claiming that the Township's "unilateral extension of existing thirty-year deed restrictions, . . . regulat[ing] the resale and rental prices of low[-] and moderate[-]income units identified in and governed by a consent order . . . was unlawful." Id. at 438. The extended restrictions were contained in the Township's affordable housing plan, the Master Deed, and individual unit deeds. Ibid. The trial court granted the defendants' motion, nullifying the Township's unilateral extension of the restrictions for an additional thirty years, finding that the deed restrictions expired. Ibid.

Here, the judge characterized the Society Hill decision as "persuasive[,] . . . well[-]reasoned and logical" and he correctly distinguished it from the matter under review. He explained that:

> [I]n Society Hill, the municipality sought to retroactively impose the restrictions of the [FHA],

COAH, UHAC, and the like on unit owners who had purchased before the enactment of the statutes, the regulations, and the like. And that's why the . . . [c]ourt ultimately found that they were inapplicable to those plaintiffs.

This case is different. In this case, . . . all of the statutory framework was in place. It's been revised from time to time, but it was all in place at the time that this unit was acquired

. . . [The unit] had been constructed and made available pursuant to the . . . [FHA] . . . . And, -- so, it was subject to these rules and -- statutes, rules, and regulations, and the ordinance.

We agree. Because "[t]he imposition of affordability controls on homes constructed <u>prior to</u> the enactment of the FHA itself, <u>were not</u> encompassed within the regulation[,]" and the Society Hill units were constructed decades before the litigation, the plaintiff "lacked legal authority, under either the UHAC or the COAH regulations, to unilaterally extend the . . . controls on their units." <u>Society Hill</u>, 445 N.J. Super. at 448-49. All the relevant law and documents pre-dated the FHA and its related regulations. Because the units in <u>Society Hill</u> were not created in contemplation of the FHA, and the Master Deed and relevant documents did not specifically permit such an extension, the Township could not extend the affordability controls.

Here, the judge aptly found that the relevant documents anticipated that the Township could extend the affordability controls. Our careful review of the record supports that conclusion. The Affordable Housing Agreement, which defendants signed, states that the restrictions imposed on defendants' unit shall be for a period of twenty years, which shall end on the first non-exempt transfer of title after June 4, 2016, "unless extended" by a municipal resolution. The Master Deed also states that the unit is subject to resale and rental controls in the FHA, COAH regulations, and Township ordinances.

Moreover, defendants' Unit Deed provided: "By the acceptance of this Deed, the Grantee consents to any future amendments or revisions of the Master Deed or the Bylaws of the Condominium Association . . ., which may be required by the laws or governmental agencies of the State of New Jersey in connection with the . . . property described . . . ." Therefore, defendants' argument lacks merit and there was no error.

## III.

We next address defendants' argument that the judge erred by ordering a partition of the property, foreclosing Reiter's interest as a tenant by the entirety, and transferring her interest to the Township.

A-2167-18T3

Defendants accepted the possibility of an equitable remedy upon receiving title to their unit. The Township's code dictates:

> Upon the occurrence of a breach of any of the regulations governing the affordable unit by an owner, developer or tenant, <u>the municipality shall have all remedies provided at law or equity</u>, including but not limited to foreclosure, tenant eviction, municipal fines, a requirement for household recertification, acceleration of all sums due under a mortgage, recoupment of any funds from a sale in the violation of the regulations, injunctive relief to prevent further violation of the regulations, entry on the premises, and specific performance.
>
> [East Hanover, N.J., Zoning Ordinance, ch. 95, art. I, §95-46.2 (1979) (emphasis added).]

Additionally, the signed AHA states:

> In the event of a threatened breach of any of the terms of this Agreement by an Owner, <u>the Authority shall have all remedies provided at law or equity</u>, including the right to seek injunctive relief or specific performance, it being recognized by both parties to this Agreement that a breach will cause irreparable harm to the Authority, in light of the public policies set forth in the [FHA] . . . .
>
> [(Emphasis added).]

We are convinced that the judge properly applied the remedy of partition under N.J.S.A. 46:3-17.4 and awarded the Township an expectancy interest based on Reiter's forfeited interest. As to selling the unit or other issues related

thereto, the judge rightfully chose to leave that open for future agreement or litigation.

Notwithstanding our analysis, we part company with the judge insofar as he made the Township an owner of the unit as a tenant by the entirety. A tenancy by the entirety "is a form of joint property ownership available only to spouses that is created 'when property is held by a husband and wife with each becoming seized and possessed of the entire estate.'" N.T.B. v. D.D.B., 442 N.J. Super. 205, 218 (App. Div. 2015) (quoting Capital Fin. Co. v. Asterbadi, 389 N.J. Super. 219, 227 (Ch. Div. 2006)). It is based on "the unity of husband and wife at common law . . . [and] survive[s] as a means of protecting marital assets during coverture and as security for one spouse on the death of the other." Ibid. (quoting Asterbadi, 389 N.J. Super. at 228).

Tenants by the entirety have "an undivided interest . . . that encompasses the entire property." Id. at 219 (alteration in original) (quoting Burbach v. Sussex Cty. Mun. Utils. Auth., 318 N.J. Super. 228, 233 (App. Div. 1999)). Yet, each tenant "holds his or her 'title and interest independently of the others.'" Ibid. (quoting Burbach, 318 N.J. Super at 233). Therefore, a tenant by the entirety "can alienate his or her right of survivorship, and a judgment creditor of either spouse may levy and execute upon such right," yet neither can "force

17

the involuntary partition of the subject property during the marriage." Id. at 218 (citing Asterbadi, 389 N.J. Super. at 227). Only upon the dissolution of a tenancy by the entirety, which converts the ownership interests into a tenancy in common, can the property be subject to partition. Freda v. Commercial Trust Co., 118 N.J. 36, 45 (1990). A township cannot be a tenant by the entirety because that status is "available only to a spouse . . . ." Jimenez v. Jimenez, 454 N.J. Super. at 432, 436 (App. Div. 2018).

If parties take ownership of property as tenants by the entirety, but are not married, they become tenants in common, absent language making the ownership a joint tenancy. Balazinski v. Lebid, 65 N.J. Super. 483, 488 (App. Div. 1961). Accordingly, we reverse the judge's order making Rayter and the Township tenants by the entirety and remand for entry of an order declaring that they are tenants in common.

IV.

Lastly, defendants argue that by transferring Reiter's interest in a property held as a tenant by the entirety, Rayter's interest is unjustly diminished, in violation of the Taking Clauses in the United States and New Jersey Constitutions. "It is a well-settled principle that [we] will decline to consider questions or issues not properly presented to the trial court when an opportunity

18

for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).  None of these exceptions apply to defendants' arguments.

Affirmed in part, reversed in part and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION